**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION, et al.

    *Plaintiffs*,

  v.

E.I. DU PONT DE NEMOURS AND
COMPANY, et al.

    *Defendants*.

Civil Action Nos.
19-14758,
19-14765,
19-14766,
19-14767.

**AMENDED OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter involves four cases which have been consolidated before the Court for pretrial proceedings. Currently pending is the motion of Defendants Corteva, Inc. ("Corteva") and DuPont de Nemours, Inc. ("New DuPont") (collectively "Movants") to dismiss each of the four Second Amended Complaints for lack of personal jurisdiction or for failure to state claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). D.E. 88.[1] The Court reviewed all submissions in support of the motion and in opposition[2] and considered the motion without oral

---

[1] Unless otherwise indicated, the docket entry numbers in this Opinion refer to Civil Action No. 19-14758.

[2] Movants' brief in support of the instant motion ("M. Br."), D.E. 88-1; Plaintiffs' (or "the State") brief in opposition ("Opp'n"), D.E. 100; Movants' reply to the State's opposition ("M. Reply"), D.E. 107; and the State's notices of supplemental persuasive authority, D.E. 143, D.E. 171, and Movants' Response to the first notice, D.E. 153.

argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Movants' motion is **DENIED**, and the Court will permit limited jurisdictional discovery.

## I.    FACTS AND PROCEDURAL HISTORY

This matter is part of a larger litigation that arises out of Defendant E.I. du Pont de Nemours & Company's ("Old DuPont") alleged contamination of four different sites in New Jersey, which Plaintiffs refer to as (1) the Chambers Works Site[3]; (2) the Parlin Site[4]; (3) the Pompton Lakes Works Site[5]; and (4) the Repauno Site.[6] In general, Plaintiffs[7] allege that Old DuPont "discharge[d] … hazardous substances and pollutants at and from" the Pompton Lakes Works Site, D.E. 61 ("SAC"), ¶ 1, "for almost a century," *id.* ¶ 2, while knowing for at least several decades that those substances are dangerous to health and to the environment, *see* Docket 19-cv-14766, D.E. 57 ("CWSAC") ¶ 4.[8] More specifically, Plaintiffs indicate that Old DuPont released per- and polyfluoroalkyl substances ("PFAS") and perfluorooctanoic acid ("PFOA") into the environment for decades, *see* SAC ¶¶ 8, 17, despite knowing for about fifty years "that[] PFOA, PFNA[9] and other PFAS compounds are extremely resistant to degradation, they persist indefinitely in the

---

[3] Civ. No. 19-14766.

[4] Civ. No. 19-14767.

[5] Civ. No. 19-14758.

[6] Civ. No. 19-14765.

[7] Plaintiffs sometimes refer to themselves collectively as "the State," *i.e.*, the State of New Jersey.

[8] Because the parties frequently cite to and rely upon the State's Second Amended Complaint in the suit arising out of Old DuPont's alleged contamination of the Chambers Works Site, the Court does as well.

[9] "PFNA" is short for "perfluorononanoic acid."

2

environment, they bioaccumulate in blood, and they pose a substantial threat to human health and the environment." CWSAC ¶ 4. As to the Pompton Lakes Work Site, Plaintiffs allege that "Old DuPont's historic operations and waste management practices have resulted in the discharge and release of scores of hazardous substances and pollutants[] … into the … natural resources at and around the Facility."[10] SAC ¶ 3.

According to Plaintiffs, since the 1980s, the State has attempted without success to get Old Dupont and, more recently, Chemours to disclose the extent of contamination and remediate the contamination. *Id.* ¶ 107. Plaintiffs continue that while Defendant have addressed some contamination, extensive contamination remains and continues to cause harm. *Id.* ¶ 120.

Plaintiffs further allege that Old DuPont "orchestrated" "a web of transactions" "over the past decade" to shield significant assets "from the State and other creditors." *Id.* ¶ 7. More specifically, the Plaintiffs allege the following:

> Old DuPont has sought to limit its PFAS and environmental liabilities by engaging in a series of complex restructuring transactions, including … the "spinoff" of its Titanium Technologies, Chemical Solutions, and Flourochemical segments (the "Performance Chemicals Business") (which included Teflon and other products, the manufacture of which involved the use of . . . PFOA . . . and other PFAS) into defendant Chemours; … the transfer of Old DuPont's historic assets to other entities, including defendant [New DuPont] … and[] … the spin-off of Old DuPont to a new parent company named Corteva, Inc. ("Corteva"). These transactions were all designed to shield billions of dollars in assets from the PFAS and environmental liabilities that DuPont tried to isolate in Chemours.

---

[10] "The Facility" appears to be another name for the Pompton Lakes Site. *See* SAC ¶ 1.

*Id.* ¶ 9.  Plaintiffs explain how Old DuPont accomplished this divestment.  *See id.* ¶ 138.[11]  Old DuPont merged with The Dow Chemical Company to form DowDuPont.  *Id.* ¶¶ 135, 142-45.[12]  DowDuPont then spun "off two[] new publicly traded companies: (i) Corteva, which currently holds Old DuPont as a subsidiary, and (ii) Dow, Inc. ('New Dow') which currently holds Old Dow.  DowDuPont was then renamed DuPont de Nemours, Inc. (*i.e.*, New DuPont)."  *Id.* ¶ 145.  Chemours "assumed direct liability for Old DuPont's decades-long history of causing environmental pollution and widespread PFAS contamination in the State and elsewhere." *Id.* ¶ 17; *see also id.* ¶ 139.  "New DuPont and New Dow now hold the majority of tangible assets formerly owned by Old DuPont." *Id.* ¶ 147.  "As a result of these transactions, the value of Old DuPont's tangible assets decreased by $20.85 billion, or approximately one-half." *Id.* ¶ 146.  Plaintiffs allege that Defendants obscured many of the details of the transactions to hide from Plaintiffs, and other creditors, the transfer of Old DuPont's assets. *Id.* ¶ 148.  Plaintiffs add that Old DuPont received "inadequate consideration" for the transfers. *Id.*

Plaintiffs also point to "the April 1, 2019 Separation and Distribution Agreement among Corteva, New Dow, and DowDuPont (the 'Separation Agreement')."  CWSAC ¶ 270; *see also* D.E. 100-6 ("Agmt.").  Plaintiffs claim that the Separation Agreement was executed after "the State commenced these four lawsuits against some or all of Old DuPont, Chemours and DuPont

---

[11] The SAC provides both this relatively concise overview and a more detailed history of these corporate operations.  The Court recounts this history to the extent necessary to decide the instant motion.

[12] In the elongated version of the transactional history, Plaintiffs clarify that Old DuPont and Old Dow "did not actually merge at all, because doing so would have infected Old Dow with all of Old DuPont's historical PFAS liabilities.  Rather, Old DuPont and Old Dow became affiliated sister companies that were each owned by the newly formed DowDuPont."  SAC ¶ 188.

4

Specialty Products[,]" and had warned those entities that remediation would be extremely expensive, exceeding Defendants' published reserves. Opp'n at 13-14 (quoting D.E. 100-4 at 4).

Plaintiffs initiated this litigation in New Jersey Superior Court, D.E. 1-1, and Defendants removed to this Court, D.E. 1. Plaintiffs filed their Second Amended Complaints on August 31, 2020. *E.g.*, SAC. Movants then filed the instant motion. D.E. 88. In the motion, the Movants clarify that they are only focused on Corteva and New DuPont, to the exclusion of the other Defendants. M. Br. at 2 n.2.

## II.   STANDARDS OF REVIEW

### A. Rule 12(b)(2) - Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In such a motion to dismiss, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015). In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.* In other words, the court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal

5

that the facts alleged in support of jurisdiction remain in dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir.2009)).

A federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)); *see also* Fed. R. Civ. P. 4(k)(1)(A). "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Display Works*, 182 F. Supp. 3d at 172 (citing *IMO Indus.*, 155 F.3d at 259). Accordingly, the two steps are collapsed into one and a court asks "whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). Thus, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

"Personal, or in personam, jurisdiction, [generally] divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'"[13] *Display Works*, 182 F. Supp. 3d at 172 (citing *Burger King*, 471 U.S. at 472 n. 14). "Specific jurisdiction 'depends on an affiliatio[n] between the forum

---

[13] There are other means of acquiring personal jurisdiction, such as consent, waiver, and in-state service on an individual. Those methods are not at issue here.

6

and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation).'" *Display Works*, 182 F. Supp. 3d at 172 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014)). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Display Works*, 182 F. Supp. 3d at 172 (quoting *Walden*, 571 U.S. at 284 n.6). If a defendant is subject to a forum's general jurisdiction, the defendant can be sued there on any matter. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If, however, a defendant is solely subject to specific jurisdiction, the defendant may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

"A … court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Mont. Eighth Jud. Dist.*, -- U.S. --, 141 S. Ct. 1017, 1024 (2021). But for an exceptional case, a corporation is "at home" only in "its place of incorporation and principal place of business." *Id.*

Specific jurisdiction requires the defendant to have "purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal citations and quotations omitted). The Third Circuit has developed a three-part test in determining whether specific personal jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317 (internal quotations omitted). First, the defendant must have "purposefully directed [its] activities at the forum."[14] *Id.* (internal

---

[14] This factor has also been characterized as "purposeful availment." *Burger King*, 471 U.S. at 475. The factor focuses on contact that the defendant itself created with the forum State. *Id.* The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person." *Id.* (internal quotations omitted) (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)); *World-Wide Volkswagen*

quotations omitted). Second, the plaintiff's claims "must arise out of or relate to at least one of those activities." *Id*. (internal quotations omitted). Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id.* (internal quotations omitted).

As noted, "the plaintiff bears the burden of establishing personal jurisdiction." *Id.* at 316. Once the plaintiff has made an adequate showing on the first two factors, the burden shifts to the defendant, who "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 324 (quoting *Burger King*, 471 U.S. at 477). The considerations and factors that courts assess include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 417 U.S. at 471 (quoting *World-Wide Volkswagen*, 444 U.S. at 292) (internal quotation marks omitted).

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court analyzed personal jurisdiction as to an intentional tort. Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc.*, 155 F.3d at 260. The Third Circuit has ruled that the *Calder* effects test requires a plaintiff to show the following:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a

---

*Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

8

>result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*Id.* at 265-66 (footnote omitted).

Finally, the Third Circuit has "recognized that the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process." *In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 825 (3d. Cir. 2005) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003)). To do so, a plaintiff "must plead facts supporting a plausible conclusion that the alleged successor entity is a mere continuation of, is the same as, or is not distinct from, the alleged predecessor entity." *Thomas-Fish v. Aetna Steel Prods. Corp.*, No. 17-cv-10648, 2019 WL 2354555, at *2 (D.N.J. June 4, 2019) (internal quotation marks and citation omitted). Successor jurisdiction can be found in the following scenarios "(1) merger or de facto merger; (2) express or implied assumption of liabilities, including by a ratification of the predecessor's activities; or (3) acquisition of assets or reorganization undertaken to fraudulently avoid jurisdiction." *In re Nazi Era Cases*, 153 F. App'x at 823; *see also Polius v. Clark Equip. Co.*, 802 F.2d 75, 78 (3d Cir. 1986).

### B. Rule 12(b)(6) - Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). A court "must accept all of the complaint's well-pleaded facts as true." *Id.* at 210. A court, however, does not credit labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). But even if plausibly pled, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III. ANALYSIS

#### A. Personal Jurisdiction

The Court focuses on specific personal jurisdiction because "[t]he State does not contend that the Court has general jurisdiction over Movants." Opp'n at 20. Movants assert that "[t]here are no allegations that either Corteva or New DuPont ever acted in the State of New Jersey, let alone that they acted in a manner relating to Plaintiffs' claims, *e.g.*, with respect to the manufacture, sale, or discharge of PFAS or other pollutants." M. Br. at 8. Movants acknowledge that "Plaintiffs' claims against Corteva and New DuPont are based on" Old DuPont's activities, but counter that "Corteva and New DuPont *did not exist* when the chemical products at issue were manufactured or sold." *Id.* (emphasis in original). Movants continue that "an indemnification agreement between Corteva and New DuPont as indemnitors of Old DuPont does not create direct liability to Plaintiffs for the alleged underlying acts of Old DuPont[,]" *id.* at 9, and that Corteva's corporate parenthood of Old DuPont "is not enough on its own to state a claim against Corteva." *Id.* at 10.

10

Plaintiffs respond that specific personal jurisdiction exists for two reasons. Opp'n at 20. First, "Movants contractually assumed Old DuPont's legacy environmental liabilities at issue in these lawsuits, allowing Old DuPont's jurisdictional contacts to be imputed to Movants[.]" *Id.* Second, "under the *Calder* decision and subsequent jurisprudence, Movants are subject to jurisdiction because they committed an intentional tort outside New Jersey, but New Jersey was the focal point of the harm and the Movants' tortious activity." *Id.* Because specific jurisdiction is assessed on a claim-by-claim basis, the Court infers that the first argument speaks to Plaintiffs' statutory and common law environmental claims and that the second speaks to Plaintiffs' fraudulent transfer claims. The Court considers each basis of jurisdiction in turn.

1. **Successor Liability**

Plaintiffs indicate that "Old DuPont does not contest that it is subject to personal jurisdiction[.]" *Id.* Plaintiffs then argue that Old DuPont's jurisdictional contacts "should be imputed to Movants[,]" under the theory of successor liability. *Id.* at 21 (quoting *In re Nazi Era Cases*, 153 F. App'x at 825). Movants reply that because "Old DuPont still exists, still has substantial assets …, and has not been merged into either Corteva or New DuPont[,] … it would not be appropriate to impute Old DuPont's jurisdictional contacts to either Corteva or New DuPont." M. Reply at 2. Movants argue that Plaintiffs have not sufficiently pled facts to impute Old DuPont's jurisdictional contacts to Corteva and New DuPont. *Id.* at 3. Movants also assert "Old DuPont had no PFAS liabilities for either Corteva or New DuPont to assume." *Id.* Movants further assert that "in connection with the July 2015 spin-off of Chemours from Old DuPont, 'Chemours assumed direct liability for Old DuPont's decades-long history of causing environmental pollution and widespread PFAS contamination in the State and elsewhere.'" *Id.* at 4 (quoting CWSAC ¶ 19). Movants contend that Plaintiffs "make no effort to explain how Corteva

11

and New DuPont could have assumed liabilities that Old DuPont had transferred to Chemours, years earlier." *Id.* at 5.

The Court finds Plaintiffs' allegations lacking. Assuming without deciding that Plaintiffs have shown that Corteva and New DuPont are sufficiently linked to Old DuPont,[15] Plaintiffs assert that "upon information and belief, New DuPont and Corteva each assumed [the critical] liabilities under the DowDuPont Separation Agreement," and accuse Movants of "bur[ying] the details in non-public schedules[.]" SAC ¶ 201. In other words, Plaintiffs seemingly acknowledge that the critical information is contained in the non-public schedules.

Plaintiffs attach a portion of the Separation Agreement, D.E. 100-6, and refer to the full version online, Opp'n at 14 n.6. Plaintiffs nevertheless indicate that the essential "[d]etails regarding which liabilities fall within 'Specialty Products Liabilities' … assumed by Movants[] are set forth in non-public schedules to the DowDuPont Separation Agreement[.]" Opp'n at 16. In reliance, Plaintiffs cite to Section 1.1(309)(vi) of the Separation Agreement, *id.*, but the schedule referenced therein appears to be non-public. Plaintiffs further assert that the Agricultural Liabilities assumed by Corteva also establish specific jurisdiction but that this information is also not publicly available. *Id.* (citing Section 1.1(38)(vii) of the Agreement, which addresses Agricultural Liabilities).

"Even though [the Court] must credit Plaintiffs' allegations, conclusory allegations will not do, and Plaintiffs' theory of jurisdiction must be plausible." *Rickman v. BMW of N. Am. LLC*, -- F. Supp.3d --, No. 18-04363 (KM) (JBC), 2021 WL 1904740, at *6, (D.N.J. May 11, 2021). Plaintiffs rely on information that is not before the Court. In fact, it is not clear if Plaintiffs have

---

[15] The Court acknowledges that, on New DuPont's website, New DuPont appears to represent that it is a continuation of or the same entity as Old DuPont. *See* Opp'n at 11-12 & n.2 (referring to DuPont, Our History Page, https://www.dupont.com/about/ourhistory.html).

reviewed the confidential schedules.  Plaintiffs request, in the alternative, that they be permitted to engage in jurisdictional discovery if "the Court is inclined to grant the Motion[.]"  Opp'n at 29-30.  Such "limited" discovery would address, among other issues, the Separation Agreement and its confidential schedules along with alleged "evidence regarding Movants' participation in the fraudulent transfer of Old DuPont's assets[.]"  *Id.* at 30.  Plaintiffs further note that the non-public "schedules have been produced in other litigation."  *Id.* at 16 (emphasis removed).  Movants do not respond to this accusation.

A court should "ordinarily allow [limited jurisdictional discovery] when a plaintiff's claim to personal jurisdiction is not clearly frivolous."  *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (internal quotations omitted).  In other words, "[i]f the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained."  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (2003)).

The Court finds that Plaintiffs have made an adequate showing to permit jurisdictional discovery.  Plaintiffs have gone to great lengths to explain how Old DuPont and Movants allegedly stripped Old DuPont of assets and liabilities and foisted them onto several alleged scapegoat corporations (*i.e.*, Chemours, Corteva, and New DuPont).  In support, Plaintiffs have appended significant portions of the Separation Agreement that they allege accomplished this diversion.  However, crucial parts of the Separation Agreement—the confidential, non-public schedules specifying exactly what the "undisclosed" liabilities are—have not been made available for the Court's review, apparently at Movants' insistence.

Therefore, the Court will order limited jurisdictional discovery as to the non-public, confidential schedules.

### 2. Fraudulent Transfer

Plaintiffs also argue that this "Court also has personal jurisdiction over Movants because Movants committed an intentional tort outside of the State that was expressly aimed at New Jersey." Opp'n at 24. Plaintiffs explain that "[c]laims under the Uniform Fraudulent Transfer Act ('UFTA'), such as the State's claims against Movants here, are intentional torts within the scope of the *Calder* test." *Id.* at 24-25. Plaintiffs claim that "Movants' role in stripping Old DuPont of assets available to pay an eventual judgment in these cases was 'expressly aimed' at New Jersey." *Id.* at 27.

Movants emphasize that all of the challenged transactions were conducted outside of New Jersey and argue that Plaintiffs have not met their burden to "show a nexus between the alleged fraudulent conduct and New Jersey, not just an incidental effect in New Jersey." M. Reply at 7-8. Movants attempt to distinguish the cases relied upon by Plaintiffs, arguing that "Plaintiffs skip over the first half of [the *Calder* effects] test and only allege that harm occurred in New Jersey." *Id.* at 10. Movants continue that in all of Plaintiffs' cited cases, the "all plaintiffs had already secured judgments against a defendant, then *afterwards* the defendants transferred assets for no value with no business explanation." *Id.* at 11 (emphasis in original). Movants also rely on recent decisions from courts of the Northern District of West Virginia and the Central District of California that they represent "dismissed these defendants on the same grounds." *Id.* at 12 (discussing *Weirton Area Water Bd., et al. v. 3M Co., et al.*, No. 5:20-cv-102 (N.D. W. Va. Nov. 20, 2020); *Golden State Water Co. v. 3M*, No. 20-8897, 2021 WL 221787 (C.D. Cal. Jan. 20, 2021)).

14

The Third Circuit has classified "fraudulent conveyance" as "a species of the tort of intentional fraud[.]" *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 14 (3d Cir. 2008). Plaintiffs allege that Movants committed that tort when they executed the Separation Agreement and engaged in the transactions detailed above. *E.g.*, SAC ¶¶ 292, 319-28.[16] Although Movants protest that in the cases cited by Plaintiffs, the "plaintiffs had already secured judgments against a defendant[,]" M. Reply at 11, the Court does not necessarily find the timing to be dispositive. The New Jersey statute provides that "a creditor" may void a transaction in certain circumstances. N.J. Stat. Ann. § 25:2-25. The statute defines a "creditor" as "a person who has a claim." N.J. Stat. Ann. § 25:2-21. "'Claim', … means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id*. Delaware uses the same definition of "claim." Del. Code. Ann. tit. 6 § 1301(1)(3). While it may be that "[m]ost cases discussing fraudulent transfers arise in the context of a subsequent action to set aside transfers and recover transferred assets filed following entry of judgment," New Jersey courts have recognized that "as demonstrated by the definition of claim, creditor, debt and debtor, [N.J. Stat. Ann. §] 25:2-21, the remedy provided by the [U]FTA applies to present and future creditors. The Court is thus undeterred by the fact that Plaintiffs' disputed claims have not been reduced to judgment." *Gilvey v. Creative Dimensions in Educ., Inc.*, 2012 WL 3656332, at *2 (N.J. Super. Ct. App. Div. Aug. 28, 2012).

---

[16] The State seeks relief under both the New Jersey and Delaware versions of the Uniform Fraudulent Transfer Act. *See, e.g.*, SAC ¶ 297. Both New Jersey and Delaware have enacted the Uniform Fraudulent Transfer Act, and the parties in this case apply the New Jersey and Delaware versions of the UFTA in tandem. Because the parties do not contend that there are any material differences between the state laws on this issue, the Court applies New Jersey law. *See Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 875 (D.N.J. 2020) (explaining that under New Jersey choice of law rules, if there is no conflict between the laws of the competing jurisdictions then "the substantive law of the forum state applies" (quoting *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *5 n.5 (D.N.J. Jan. 24, 2014))).

The Court finds that the unavailability of the confidential schedules prevents the Court from determining whether Movants targeted New Jersey in carrying out the allegedly fraudulent transfers. If the confidential schedules reflect that the Movants entered into the Separation Agreement in order assist Old DuPont in evading liability for potential claims that arising in New Jersey, then the Movants could potentially be subject to specific personal jurisdiction in New Jersey. Such documentation could show that Movants reached out and targeted New Jersey itself by engaging a scheme to limit the ability of *any* creditor to collect on liabilities that originally arose in New Jersey. *See Ford Motor Co.*, 141 S. Ct. at 1031-32 (explaining that due process is satisfied where a defendant's "contacts are related enough to the plaintiffs' suits.").

For this additional reason, the Court will order limited jurisdictional discovery as to the confidential schedules.

### B. Failure to State a Claim

Movants reason that "[g]iven the absence of any factual allegations whatsoever linking them to any manufacturing, sale, or direct involvement with any chemical products, the claims against Corteva and New DuPont should also be dismissed under Federal Rule of Civil Procedure 12(b)(6)." M. Br. at 8. However, because the limited jurisdictional discovery may also shed light on this argument, the Court denies without prejudice Movants' motion to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV.   CONCLUSION & ORDER

For the foregoing reasons, Movants' motion, D.E. 88, is denied, and the Court will order limited jurisdictional discovery. An appropriate order accompanies this Opinion.

Dated:  December 20, 2021

                                                                                   John Michael Vazquez, U.S.D.J.